2024 IL App (2d) 230291-U
No. 2-23-0291
Order filed July 1, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-DV-43 |
| DONNELL B. DOWNEY, | ) ) | Honorable Carlo D. Colosimo, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: (1) Trial counsel was not ineffective at trial for failing to present evidence she was unaware of or that would not have a reasonable probability of changing the trial's outcome.  (2) Although the trial court, at the hearing on defendant's posttrial ineffectiveness claim, did not formally admit the evidence defendant included with his motion, the trial court substantively considered the evidence and found it insufficient to support the ineffectiveness claim.

¶ 2   Defendant, Donnell B. Downey, was charged with four counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2022)).  Those counts charged defendant with (1) making physical contact of an insulting or provoking nature with his wife, Brandia Young (count IV), and his niece, R'Moni Young (count II), and (2) knowingly causing bodily harm and pain to Brandia

(count III) and R'Moni (count I).[1] Following a bench trial, defendant was convicted of only count IV, which charged defendant with making physical contact of an insulting or provoking nature with Brandia by "plac[ing] his hand around Brandia['s] *** throat and push[ing] her." See *id.* § 12-3.2(a)(2). After the trial, defendant's trial counsel moved to withdraw, the trial court granted that motion, and defendant retained new counsel (posttrial counsel). Defendant moved for a new trial, attaching as exhibits what he claimed was exculpatory evidence and alleging that trial counsel was ineffective for failing to present that evidence at trial. Following a hearing, where the trial court considered but did not formally admit the exculpatory evidence, the court denied the motion. After defendant was sentenced, he filed this timely appeal.

¶ 3                                   I. BACKGROUND

¶ 4       Brandia and R'Moni testified for the State. Their testimony revealed that defendant, Brandia, and Brandia's three children, and R'Moni lived together. At around 10:30 p.m. on March 23, 2022, Brandia and R'Moni were at home, seated at a table directly behind a couch in the living room. Defendant was seated in a chair next to the couch. Suri, defendant and Brandia's middle child, was doing handstands in the living room. This upset Brandia, as Suri had hurt herself doing this previously. Brandia confronted defendant about allowing Suri to do handstands in the house. Defendant and Brandia began arguing.

¶ 5       As the argument escalated, defendant ordered the three children to go upstairs. Although the children did not want to leave, they started going upstairs as defendant stood near the bottom

_____

[1]Originally, counts I and III alleged that the contact "caused bodily harm," while counts II and IV alleged that the contact was of "an insulting nature." Before trial, counts I and III were amended to add "causing pain," and counts II and IV were amended to add "provoking."

of the stairs. Brandia "had words" with defendant, and defendant moved toward Brandia. Brandia was "not really sure where the [children] were" at this time. Defendant came within inches of Brandia's face, and Brandia continued arguing. They yelled at each other to shut up.

¶ 6    R'Moni, still seated at the table, asked defendant and Brandia to please stop yelling at each other. R'Moni and defendant swore at each other and "had words," and defendant moved toward R'Moni. Defendant ordered R'Moni not to talk to him that way. He told her to leave the house.

¶ 7    Brandia rushed to get between defendant and R'Moni. At one point, according to R'Moni, defendant grabbed the jacket she was wearing and tried to pull her up from the table. However, she stood up on her own, and the jacket did not rip. As defendant "guide[d]" R'Moni to the front door, Brandia continued arguing with defendant. With R'Moni in front of him and Brandia behind him, defendant turned around to face Brandia. Defendant put his hands around Brandia's neck. Brandia stated that she was "in shock" and felt "dead inside" and "unsafe." Brandia said to defendant, "[Y]ou choked me." Although Brandia did not recall how long defendant had his hands around her neck, she "remember[ed] looking into [defendant's] eyes and his eyes got big and he like let go." Defendant turned back around and continued guiding R'Moni to the front door.

¶ 8    R'Moni, who remained in front of defendant and Brandia, did not see defendant put his hands around Brandia's neck. However, she did hear Brandia assert that defendant had choked her. Brandia testified that only R'Moni was present when defendant put his hands around her neck.

¶ 9    As defendant and Brandia continued arguing, Brandia moved to defendant's left. Defendant forcefully elbowed Brandia. The impact "pushed" her, and she slipped on a box on the floor and fell. Brandia testified that this made her feel "[p]owerless."

¶ 10    R'Moni witnessed defendant elbow Brandia. She confronted defendant, and he claimed that Brandia had pushed him. R'Moni testified that Brandia "almost" fell from the elbowing. She clarified that she saw Brandia "almost like in a ninja pose kind of" after slipping on the box.

¶ 11    Once R'Moni was outside the house, defendant shut and locked the front door. The police arrived soon after R'Moni exited the house. Brandia testified that she did not see any children on the first floor during the altercation.

¶ 12    During defendant's cross-examination of Brandia, he moved to admit a video she recorded right after the incident. The State objected, arguing that the video was irrelevant. The trial court sustained the objection.

¶ 13    After the State rested, defendant moved for a directed finding on all four counts of domestic battery. The trial court granted the motion as to counts I and III, which charged defendant with causing bodily harm and pain to Brandia and R'Moni. The court denied the motion as to counts II and IV, which charged defendant with making physical contact of an insulting or provoking nature with Brandia and R'Moni.

¶ 14    Beth McCloy testified for defendant. She was an investigator for the Department of Children and Family Services (DCFS). She testified that she spoke with R'Moni a little over two months after the incident. R'Moni told her that she did not witness any choking or physical altercation between defendant and Brandia. McCloy did not specifically ask R'Moni whether she saw defendant "push" Brandia. However, McCloy indicated that, if R'Moni had said that she saw defendant push Brandia, McCloy would have included this in her report.

¶ 15    After McCloy testified, the trial court admonished defendant about his right to testify. The court advised defendant that, although trial counsel could make recommendations about whether defendant should testify, the decision was "wholly" and "ultimately" his. Defendant was given

time to talk with trial counsel about whether he should testify. After speaking with defendant, trial counsel advised the court that defendant did not wish to testify.

¶ 16    Trial counsel then informed the trial court that the parties would be stipulating to the admission of the video Brandia recorded after the incident. The State said it would stipulate to foundation and publication to the court but questioned the video's relevance. The court told the parties that it would review the video and decide how much weight to give it. The parties informed the court that the defense would rest after the court reviewed the video and that the State would not call any rebuttal witnesses. After the court said it would review the video and render its judgment, trial counsel said, "Hold on. We're not going to move in the video. We're just going to rest." The court confirmed with trial counsel that the defense was resting without offering the video.

¶ 17    The trial court found defendant not guilty of count II but guilty of count IV, which charged defendant with making physical contact of an insulting or provoking nature with Brandia. The court explained:

        "I'm going to address the issue of R'Moni first ***. *** [T]he evidence presented

        as far as pulling on the jacket, there's no rip to the jacket. R'Moni testified that she stood

        up, she wasn't dragged up with her weight. I don't think the State has met their burden as

        far as Count 2. So I'm going to find the defendant not guilty as to Count 2.

        As to Count 4 for Brandia Young, this one really comes down to an issue of

        credibility.

        I'm looking at the testimony of [Brandia] as well as R'Moni *** as far as her

        description of what she saw by the sofa. It's clear that *** R'Moni *** did not see the

        choking, so it comes down to the credibility of Brandia ***. Based on her testimony, I do

find that the defendant did put his arms [*sic*] around her neck in a choking fashion, that they had that eye contact, that he released her neck. Brandia did testify that when that occurred, that she felt—I put down her words, hold on a second—that she was in shock, that she felt dead inside. I believe the evidence has proven that it was of an insulting and provoking nature based on her testimony as far as the choking action.

I also do find her credible as far as the shove during the run. I do feel that the State has met their burden beyond a reasonable doubt based on her testimony."

¶ 18    Thereafter, trial counsel and posttrial counsel filed a "Joint Motion to Substitute and Withdraw as Counsel." At the same time, posttrial counsel filed on defendant's behalf a motion for a new trial. The trial court granted the joint motion to substitute and withdraw, and posttrial counsel filed on defendant's behalf an amended motion for a new trial. In the amended motion, which incorporated the initial one, defendant argued that trial counsel was ineffective because she (1) erroneously advised defendant not to testify at trial; (2) failed to introduce parts of the video Brandia recorded right after the incident and about which trial counsel made notes that she failed to bring to trial; (3) failed to call defendant and Brandia's three children to testify, including their oldest child, Sarai Young, who was an eyewitness to the incident and would have testified that there was no physical contact between defendant and Brandia; and (4) failed to impeach Brandia with her "supplement to her petition for [an] order of protection" against defendant (supplemental statement). Attached to the motion as exhibits were (1) defendant's affidavit, (2) Brandia's supplemental statement, (3) Sarai's affidavit, and (4) a DCFS report that McCloy prepared.

¶ 19    In his affidavit, defendant averred first that trial counsel advised him not to testify because Brandia and R'Moni were so unbelievable that his testimony was unnecessary. Second, defendant asserted that, in the video, Brandia told police officers that she did not witness defendant touch

R'Moni. Trial counsel took notes of where Brandia made such statements in the video, but she failed to bring those notes to the trial and brought up the video only at the end of the trial. Third, defendant attested that the sequence of events to which Brandia testified differed from the account she gave in her supplemental statement. Specifically, Brandia indicated in her supplemental statement that defendant walked upstairs with the children, she followed, and then she returned to the first floor. When defendant came downstairs, he went to the basement to retrieve some electronic equipment. Once defendant returned to the first floor, he yelled at her. Brandia also indicated in her supplemental statement that defendant pushed her (and she fell) while R'Moni was still seated at the table, and that defendant choked her while R'Moni was walking to the door. Defendant asserted that trial counsel could have used the supplemental statement to impeach Brandia, but counsel failed to bring a copy to court. Last, defendant attested that he shared with trial counsel the DCFS report McCloy prepared following the incident. According to defendant, the report indicated that there was "a verbal altercation with no physical dynamics." Defendant told trial counsel that defendant and Brandia's children witnessed the incident, but counsel neither interviewed the children nor called them to testify at trial.

¶ 20 Brandia's supplemental statement departed from her trial testimony in the manner cited in defendant's affidavit. Yet, despite giving a different sequence of events, Brandia confirmed in the supplemental statement that defendant grabbed her neck, choked her, and pushed her, causing her to slip and fall on a piece of cardboard.

¶ 21 Sarai attested in her affidavit that defendant told the children to go upstairs, but they did not comply until defendant walked R'Moni to the door. Sarai "remained on the main floor of [her] home" during the incident and "was in full view of [defendant] walking *** R'Moni[ ] out of the house and did not witness any physical altercation between [defendant] and [Brandia]."

¶ 22    In her DCFS report, McCloy determined that the claim of child abuse or neglect concerning the incident was unfounded. Her investigation revealed that "[n]one of the children report[ed] witnessing a physical altercation" on the day of the incident. Sarai reported to McCloy that, after defendant told the children to go upstairs, she "remained upstairs." Sarai was in her room with her brother, D.J., the youngest child. Suri confirmed that the children were upstairs, stating to McCloy that "[D.J.] kept trying to sneak down the stairs." D.J. told McCloy that "[he] [did] not know if [defendant] hit [Brandia]," as "he did not see anything." McCloy concluded that the "[children] were upstairs and denied seeing [defendant] choke [Brandia]."

¶ 23    At the hearing, the trial court impounded all the attachments to defendant's amended motion except his affidavit. Only defendant testified at the hearing. He said he hired trial counsel to represent him after being charged. At their first meeting, defendant gave her his account of what happened. After this meeting, defendant had only one other meeting with trial counsel. They were supposed to discuss strategy at this second meeting, but they did not. Instead, they only reviewed the video Brandia recorded after the incident. Defendant and counsel agreed that parts of the video were relevant. Counsel took notes of where in the video Brandia said that defendant did not touch R'Moni. However, counsel did not have these notes with her at trial, the video was not played at trial, and the court never reviewed the video.

¶ 24    Defendant also testified that he gave trial counsel Brandia's supplemental statement. Defendant believed that parts of the supplemental statement were relevant, and he told counsel several times that she should use the supplemental statement to impeach Brandia. However, at trial, counsel could not find her copy of the supplemental statement. She asked court personnel for a copy, but no copy was given to her. Thus, counsel failed to impeach Brandia with the supplemental statement.

¶ 25    Further, defendant testified that, from his own recollection of the incident and the information in the DCFS report, he believed that trial counsel should have interviewed defendant and Brandia's children and called at least Sarai to testify for the defense at trial. Defendant was asked if he told counsel that Sarai should be called to testify at trial. He replied, "Yes. Leveraging the statements provided to the investigator, I thought that that was a reasonable request."

¶ 26    Last, defendant testified that, although trial counsel advised him not to testify at trial, he knew that the decision whether to testify was solely his. Defendant admitted that "[he] decide[d] not to testify" at trial.

¶ 27    After defendant's testimony, posttrial counsel asked to call Sarai, who was in court and available to testify. Counsel represented that Sarai would testify consistently with her affidavit. The trial court declined to permit Sarai "to testify as to what she would have testified to" at trial. The court explained:

> "The issue before me today is what factors went into [trial counsel's] decisions as to whether they were effective, ineffective, whether she consulted with your client, whether there was ineffective assistance of counsel.
>
> So really it's a matter of what transpired between your client and [trial counsel] into making those decisions.
>
> I'm not going to let a 14-year-old come in here and testify and put her in that position. So I am not going to allow her to testify."

¶ 28    The trial court denied the amended motion for a new trial. In doing so, the court stated:

> "I have reviewed the motion, the exhibits, the transcript that was provided, and now the testimony and arguments of the parties that were made this afternoon.

On the motion for a new trial, obviously the burden rests with the moving party. I agree I would have liked to hear from [trial counsel] regarding her decisions as to why certain decisions were made. Neither party subpoenaed [trial counsel] to be here to testify.

Furthermore, I think the issue, I don't want to say it's moot, but the issue that's raised in the motion of [defendant] stating that, about his decision not to testify, that would have—that would have possibly changed the outcome of the trial and that he wished to testify, I think the record clearly shows that [defendant] was admonished by this court and clearly told that the decision was wholly his, he was given time to talk with his attorney, and ultimately told at the end of the day he would decide whether he testified or not and he chose not to.

I think we have to—it's always difficult to look at strategic decisions made by attorneys after the fact after a trial because, as we all know who have tried cases, there are tens, if not hundreds, of minor decisions that we made throughout the process of an entire criminal case as far as decisions that we make.

You know, ultimately, I think it's difficult to reach the standard of ineffective assistance of counsel when the defendant was charged with four counts of domestic battery and was acquitted of three. I think that's something that cannot be taken lightly by the court.

I don't know if the additional evidence that [trial counsel] chose not to put in maybe would have convicted him on two different [counts], and acquitted him on the fourth one, I have no idea. I have no idea what the evidence would have been if different decisions were made.

So, based on the motion, based on the testimony here, I'm going to deny the motion for a new trial."

¶ 29    Defendant was sentenced, and this timely appeal followed.

¶ 30                                    II. ANALYSIS

¶ 31    On appeal, defendant's two main contentions are: (1) trial counsel was ineffective because she failed to present exculpatory evidence at trial and (2) the trial court erred when, at the hearing on defendant's posttrial motion, it refused to admit the exculpatory evidence attached to defendant's motion and to allow Sarai's testimony—all of which evidence, defendant claims, was relevant to his claim that trial counsel was ineffective. Defendant asserts that trial counsel was ineffective at trial in several respects. First, trial counsel failed to present the video Brandia recorded after the incident and to impeach Brandia with her supplemental statement. Second, trial counsel should have reviewed the DCFS report more fully and presented testimony from defendant and Brandia's three children—particularly Sarai, who would have testified that she was on the first floor during the incident and did not see any physical altercation between defendant and Brandia.[2]

¶ 32    First, we consider whether the trial court erred when it refused to admit exculpatory evidence at the hearing on the amended motion for a new trial. We review this issue under an abuse-of-discretion standard. *People v. Davis*, 322 Ill. App. 3d 762, 765 (2001). A trial court abuses its discretion when the " 'court's ruling is fanciful, unreasonable or when no reasonable person would adopt the trial court's view.' " *In re D.M.*, 2016 IL App (1st) 152608, ¶ 42 (quoting *People v. Taylor*, 2011 IL 110067, ¶ 27).

_____

[2]We note that defendant does not argue on appeal, as he did in the trial court, that trial counsel was ineffective for advising him not to testify at trial.

¶ 33    We begin with the documentary evidence defendant attached as exhibits to his amended motion for a new trial. Defendant claims that the trial court abused its discretion by not admitting this evidence. Although there was likely a hearsay impediment to the admission of the evidence, we need not decide the question of admissibility. Despite not formally admitting the motion exhibits, the trial court was clear that it considered them, assessed their weight on the issue of counsel's ineffectiveness, and concluded that defendant failed to establish that the evidence would have made a difference at trial. Therefore, any error in failing to admit the evidence was harmless. See *People v. Carter*, 2023 IL App (3d) 210370-U, ¶ 18 (the trial court's failure to hold a formal evidentiary hearing on the defendant's posttrial ineffectiveness claim or formally admit into evidence the only support for the claim, *i.e.*, a transcript of *voir dire* showing improper prosecution questions, was harmless where the trial court nonetheless considered the substance of the transcript).

¶ 34    Defendant also argues that the trial court erred in refusing to allow Sarai to testify. We disagree. Posttrial counsel represented that Sarai would testify consistently with her affidavit. Thus, the trial court could assess the significance of her testimony by reviewing her affidavit. The court concluded that neither her testimony nor the remainder of the allegedly exculpatory evidence established the ineffectiveness claim.

¶ 35    Second, we address whether defendant's amended motion for a new trial should have been granted because trial counsel was ineffective. We review for manifest error the trial court's denial of a defendant's posttrial claim of ineffective assistance of counsel. *People v. Tolefree*, 2011 IL App (1st) 100689, ¶ 25. "Manifest error" is error that is clearly plain, evident, and indisputable. *Id.*

¶ 36    In considering whether trial counsel was ineffective, we observe that every defendant has a constitutional right to the effective assistance of counsel under the United States and Illinois Constitutions.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8.  Claims of ineffective assistance are governed by the *Strickland* standard (*Strickland v. Washington*, 466 U.S. 668, 687 (1984)). See *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984) (adopting *Strickland*).  To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687.  More specifically, a defendant must show that (1) counsel's performance was objectively unreasonable under prevailing professional norms and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A defendant's failure to establish either prong of the test warrants a finding that counsel was not ineffective.  See *People v. Boots*, 2022 IL App (2d) 200640, ¶ 35 ("A defendant must satisfy both prongs of the *Strickland* test to prevail, and the failure to establish either prong precludes a finding of ineffective assistance of counsel.").

¶ 37    We conclude that trial counsel was not ineffective for failing to present the allegedly exculpatory evidence.  First, because the video is not included in the record on appeal, we must presume that the trial court's judgment that trial counsel was not ineffective for failing to submit the video was in conformity with the law and had a sufficient factual basis.  See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).  That said, even if the video contained what defendant says it did, there is no reasonable probability that, if trial counsel submitted the video, defendant would have been found not guilty of count IV, which alleged that he pushed and choked Brandia. On the video, according to defendant, Brandia tells police officers that she did not witness defendant touch *R'Moni*.  Defendant, however, was found not guilty of battering R'Moni.  Indeed,

the defendant conceded at oral argument that trial counsel was not ineffective for failing to submit the video, given that it did not concern the only count on which the defendant was found guilty— the count alleging he made physical contact with an insulting or provoking nature with *Brandia*.

¶ 38    Second, concerning Brandia's supplemental statement, the decision whether to impeach a witness is a matter of trial strategy that cannot support a claim of ineffective assistance of counsel absent a showing that counsel's decision was objectively unreasonable. *People v. Bell*, 2021 IL App (1st) 190366, ¶ 79. Although, as defendant indicated in his affidavit, Brandia's supplemental statement differed from her trial testimony, the discrepancies concerned minor details that had no bearing on whether defendant battered Brandia. See *People v. Smith*, 2012 IL App (1st) 102354, ¶ 67, *superseded by statute on other grounds per People v. Phagan*, 2019 IL App (1st) 153031, *overruled on other grounds by People v. Taylor*, 2023 IL 128316. Impeaching Brandia on these minor discrepancies would not have helped defendant's case. Indeed, not impeaching Brandia with her supplemental statement avoided the risk that Brandia would have been rehabilitated on redirect with statements supporting her testimony that defendant choked and pushed her. See *id.* Therefore, failing to impeach Brandia with the supplemental statement was not objectively unreasonable.

¶ 39    Third, nothing in the DCFS report indicates that the children witnessed the incident between defendant and Brandia. Rather, the report makes clear that all three children were upstairs, unable to witness any physical contact between their parents. Given that, we cannot conclude that trial counsel was ineffective for failing to interview the children and call Sarai to testify at trial. Although trial counsel has a professional duty to conduct reasonable investigations, and the failure to investigate fully can constitute ineffective assistance of counsel (*People v. Domagala*, 2013 IL 113688, ¶ 38), "[l]ack of investigation is to be judged against a standard of

reasonableness given all of the circumstances, 'applying a heavy measure of deference to counsel's judgments' " (*People v. Kokoraleis*, 159 Ill. 2d 325, 330 (1994) (quoting *Strickland*, 466 U.S. at 691)). Reasonable conduct includes "a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Here, because the DCFS report indicated that the children, including Sarai, were not present when the incident happened, we cannot conclude that trial counsel was ineffective for failing to interview any of the children about what they saw, even if defendant told trial counsel that, despite the DCFS report, he believed the children were downstairs when the incident happened. See *id.* at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Similarly, given the information available to trial counsel before trial, her failure to call Sarai to testify did not constitute ineffective assistance. Decisions concerning whether to call certain witnesses are matters of trial strategy, reserved for trial counsel's discretion. *People v. Patterson*, 217 Ill. 2d 407, 442 (2005). Because trial counsel knew at trial that none of the children, including Sarai, witnessed the incident, her decision not to call Sarai was reasonable.

¶ 40    The cases on which defendant relies are distinguishable, as each involved trial counsel's failure to present at trial exculpatory evidence of which counsel was aware. Specifically, the court in *People v. York*, 312 Ill. App. 3d 434, 437-38 (2000), found trial counsel ineffective for failing to introduce DNA evidence that supported the defendant's theory of the case and exonerated him. In *People v. Tate*, 305 Ill. App. 3d 607, 612 (1999), the appellate court reversed the second-stage dismissal of the defendant's postconviction ineffectiveness claim, because there was a substantial showing that trial counsel had no apparent strategic reason for not presenting alibi witnesses. The court in *People v. Skinner*, 220 Ill. App. 3d 479, 482, 484-85 (1991), found trial counsel ineffective for failing to (1) cross-examine an eyewitness regarding a police report showing that he did not

identify the defendant as the burglar and (2) call the defendant's parents at trial to testify that the defendant lived with them and not at the home where the stolen television was found. In *People v. O'Banner*, 215 Ill. App. 3d 778, 786, 788, 790-91 (1991), the appellate court found trial counsel ineffective for failing to present evidence that (1) the defendant's son—not the defendant—shot the victim (the defendant's husband) by accident when he and the victim struggled over a gun the victim had in his hip pocket; and (2) to protect her son, the defendant had lied to the authorities that she had shot the victim.

¶ 41    Unlike in these cases, most of the evidence defendant submitted with his posttrial motion would not have exonerated him of count IV, *i.e.*, making physical contact of an insulting or provoking nature with Brandia. Sarai's affidavit is the only evidence that could have. However, trial counsel was unaware before trial that Sarai would claim to have witnessed the incident. Indeed, when McCloy was compiling the DCFS report, Sarai told McCloy that she had not witnessed the incident. Thus, trial counsel, who had access to the DCFS report, cannot be deemed ineffective for failing to interview Sarai.

¶ 42    Defendant claims that we should, like the court in *O'Banner*, decline to "infer that [trial counsel] made a strategic decision not to call [Sarai]" when trial counsel was not called to testify at the hearing on the amended motion for a new trial. See *O'Banner*, 215 Ill. App. 3d at 791-92. Here, unlike in *O'Banner*, we make no determination concerning trial counsel's strategy. Rather, we conclude that, given the information available to trial counsel before trial, counsel was not ineffective for failing to (1) present evidence that would not have changed the outcome of defendant's case or (2) interview defendant and Brandia's children, who told McCloy they did not witness the interaction between defendant and Brandia.

¶ 43                                    III. CONCLUSION

¶ 44    For the reasons stated, we affirm the judgment of the circuit court of Kendall County.

¶ 45    Affirmed.